IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IAN LYNN MARSTON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-19-43-SPS |
| ) | |
| COMMISSIONER of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Ian Lynn Marston requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a

five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty years old at the time of the administrative hearing (Tr. 44, 315). He completed tenth grade and has previously worked as a security guard, commercial driver/CDL, oil changer, backhoe operator, automotive worker, roustabout, and off-road truck driver (Tr. 33, 389). The claimant alleges inability to work since January 1, 2015, due to degenerative back disease, single fusion at L5-S1, epilepsy, depression, anxiety, post-traumatic stress disorder (PTSD), and insomnia (Tr. 388).

### Procedural History

On June 23, 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and he applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, May 26, 2016. His applications were denied. ALJ Susan W. Conyers conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 3, 2018 (Tr. 22-35). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she found that the claimant should avoid workplace hazards such

as unprotected heights, hazardous machinery, open water, and open flame.  She further found that the claimant could frequently use his right upper extremity for handling and fingering, and that he could occasionally stoop, kneel, and crouch, but should avoid crawling.  Finally, she determined that the claimant could perform simple and routine tasks consistent with unskilled work, and that he could occasionally and superficially interact with supervisors and coworkers (interaction that is brief, sustained, and task oriented), but that he could not interact with the public; that he would do best working with things and data rather than the people; and that he could not interact with the public (Tr. 27).  The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, hand bander/paper goods, folder, and agricultural produce sorter (Tr. 33-34).

## Review

The claimant's sole contention of error is that the ALJ failed to properly account for the "other" source opinion of counselor Donita Whitehead.  The Court, however, finds this contention unpersuasive for the following reasons.

The ALJ found the claimant had the severe impairments of disorder of the spine (status post-motor vehicle accident and 360 degree lumbar fusion), thoracic spine spondylosis with dextroscoliosis of the upper thoracic spine – sciatica, epilepsy/complex partial seizures not intractable, generalized anxiety disorder, PTSD, major depressive disorder, and cannabis use uncomplicated (Tr. 24).  In a previous workman's compensation case from 2009, Dr. James Odor had found that the claimant tested as having severe to

extreme depression and assessed him with a twenty-five percent permanent partial impairment to the body as a whole due to psychological overlay (Tr. 1197-1106).

The relevant mental health medical records reflect that the claimant underwent inpatient treatment for depression, anxiety, and suicidal ideation from May 17, 2016 through May 24, 2016 (Tr. 629). He reported at the time that seizures had prevented him from working and having a normal life, which contributed to his depression and increased his suicidal ideation (Tr. 633, 657). There is some indication that the claimant had been in a wreck and hit his head prior to the suicidal ideation (Tr. 693). He was discharged with follow-up treatment planned at Mental Health Services of Southern Oklahoma (MHSSO) (Tr. 642). On June 3, 2016, a neurology treatment noted reported the claimant's mental health treatment and stated that the claimant was "doing much better" (Tr. 705).

In June 2016, mental health treatment notes reflect that the claimant reported improvements to his anxiety, good sleep, and good appetite, but problems with short-term memory and completing tasks, as well as impulse control and anger problems (Tr. 664). The claimant's prognosis was fair, if he committed and adhered to treatment (Tr. 664). In September 2016, the claimant's counselor noted that the claimant was irritable and angry, but that it appeared the frustration was with his own mood because he was pleasant and controlled with her (Tr. 691). On November 2, 2016, the claimant reported depression and anxiety symptoms still present but improving, with no suicidal thoughts (Tr. 684, 903). By November 23, 2016, the claimant reported that he was doing better, with no depressive symptoms, anxiety, or suicidal thoughts, along with good sleep and appetite (Tr. 681). However, in December 2016, the claimant was again positive for suicidal ideation and

stated a need to schedule counseling, but he was also noted to have a normal mood and affect (Tr. 1164-1165).

On January 23, 2017, Donita Whitehead, LPC candidate, conducted an updated assessment of the claimant (Tr. 1184-1199). In this assessment, Ms. Whitehead noted the claimant's diagnoses of major depressive disorder, recurrent, severe with psychotic symptoms, as well as PTSD and uncomplicated cannabis abuse, and noted a small increase of the claimant's Global Assessment of Functioning (GAF) score (Tr. 1184). Notes from February 1, 2017 and May 1, 2017, which appear to indicate the claimant was seen by Ms. Whitehead as well as the claimant's MHSSO physician, state that the claimant's depression, anxiety, and psychosis were absent (Tr. 1200-1205).

On June 15, 2017, Ms. Whitehead completed an RFC Assessment Form related to the claimant's mental impairments (Tr. 1175-1179). In it, she indicated that the claimant was markedly limited in the ability to understand and remember detailed instructions; carry out very short and simple instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically-based symptoms; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation (Tr. 1175-1178). She

also indicated that the claimant had moderate limitations in the ability to understand and remember very short and simple instructions (Tr. 1175).  Ms. Whitehead wrote a letter that the claimant's diagnoses included PTSD, suicidal ideation, and recurrent major depressive disorder with severe psychotic symptoms (Tr. 1180).  In it, she noted the claimant's treatment at MHSSO also addressed the claimant's physical health issues, stating that it was the opinion of MHSSO that the claimant's mental health issues "have severely limited his ability to maintain, perform, and/or function well in work related tasks" (Tr. 1180).  She also noted that the claimant had physical limitations including limited use of the right hand, spinal pain, and seizures (Tr. 1180).

A July 2017, neurology treatment note reported that the claimant scored positive for depression, but that he was seeing a counselor and on medication for his anxiety and depression (Tr. 1243).  An August 10, 2017 treatment note from Ardmore Clinic indicated that the claimant complained of depression, anxiety, and PTSD, but that he was on medication, stable, and seeing behavioral health (Tr. 1240).

Dr. William H. Farrell reviewed the claimant's record and determined that the claimant was markedly limited in the typical three areas of ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public, and that he was also moderately limited in the ability to complete a normal workday and workweek, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Farrell concluded that the claimant could understand and carry out simple instructions

under routine supervision and relate superficially to others for work matters, but that he could not relate to the general public. He further stated that the claimant's adaptive functions were intact for routine changes (Tr. 120-122). On reconsideration, Dr. Burnard Pearce essentially adopted Dr. Farrell's findings (Tr. 161-163).

In her written opinion at step four, the ALJ summarized the claimant's testimony as well as the medical evidence in the record. The ALJ noted the claimant's 2016 treatment for suicidal ideation, then noted the claimant's follow-up treatment notes through 2016 and 2017 (Tr. 30-31). She found that although the claimant reported anxiety around others, he had a normal and/or pleasant mood during the period at issue, as well as normal recent and remote memory despite alleged memory problems (Tr. 31). She then assigned great weight to the opinions of Dr. Farrell and Dr. Pearce, finding them consistent with the medical evidence. She noted that the claimant once reported he was "not good" and that although he was irritable and angry during a mental status exam in September 2016, he was nevertheless pleasant and controlled (Tr. 31). She further noted the claimant's conservative treatment, and generally normal and/or pleasant mood and affect during the period at issue (Tr. 32). She then summarized Ms. Whitehead's assessment but gave it little weight because there were not "continuing detailed records" as to the claimant's treatment and further because she opined on the claimant's physical health and did not have expertise in that area (Tr. 32). She ultimately concluded that the claimant was not disabled (Tr. 33-35).

The claimant contends that ALJ failed to properly analyze Donita Whitehead's opinion as the claimant's counselor. The Court finds that the ALJ did not, however, commit any error in her analysis. Social Security regulations provide for the proper

consideration of "other source" opinions such Ms. Whitehead's provided in this case. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact, (ii) whether the opinion is consistent with other evidence, (iii) the extent the source provides relevant supporting evidence, (iv) how well the source's opinion is explained, (v) whether claimant's impairment is related to a source's specialty or area of expertise, and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d). The ALJ's treatment of Ms. Whitehead's opinion met these standards. The ALJ noted the length and conservative nature of the claimant's treatment, the lack of longitudinal detailed records to support her opinion, and the fact that Ms. Whitehead opined on the claimant's physical limitations which were well outside her counseling specialty. This was sufficient to allow the Court to follow her reasoning. When all the evidence is taken into account, the Court is satisfied that the ALJ's conclusion that the claimant could perform the assigned RFC is supported by substantial evidence.

The ALJ specifically noted the medical records available in this case, gave reasons for her RFC determination, and ultimately found that the claimant was not disabled. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. The essence of the claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the undersigned Magistrate Judge simply may not do. *See, e. g., Casias*, 933 F.2d at 800. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 1st day of September, 2020.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**